**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Linda BRADBERRY, Defendant-Appellant.**

No. 74–1628.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 1975.

Decided June 9, 1975.

Dean Leslie Foschio and Joseph P. Bauer, Notre Dame, Ind., for defendant-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman, Ann C. Tighe, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before CASTLE, Senior Circuit Judge, and SWYGERT and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

Appellant was found guilty of conspiring with four other election judges to commit vote fraud during a primary election on March 21, 1972, in violation of 18 U.S.C. § 241.[1] The government proved that false votes were cast for state and local candidates, but not necessarily for any federal candidates. The record therefore appeared to present the question of statutory construction left

---

1. "§ 241. Conspiracy against rights of citizens.

 If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same;

\* \* \* \* \* \*

They shall be fined not more than $10,000 or imprisoned not more than ten years, or both; and if death results, they shall be subject to imprisonment for any term of years or for life."

open in Anderson v. United States, 417 U.S. 211, 222, 94 S.Ct. 2253, 41 L.Ed.2d 20.[2] However, we do not reach that question because we find that the indictment accused the defendant only of conspiring to affect the election for federal offices,[3] and that the evidence is insufficient to sustain the conviction on that charge.

 To prove a violation of § 241 the prosecutor must show that the defendant acted with a specific intent to interfere with a protected federal right. United States v. Guest, 383 U.S. 745, 753–754, 86 S.Ct. 1170, 16 L.Ed.2d 239. The source of this requirement is the need to give the statute sufficient specificity to avoid unconstitutional vagueness, thereby allowing the Act to serve its great purpose to protect the individual in his civil liberties. Screws v. United States, 325 U.S. 91, 98–100, 65 S.Ct. 1031, 89 L.Ed. 1495. In this case, the indictment unambiguously identifies the right to cast votes in an election for federal offices as the federal right at stake.[4] It would be inconsistent with the need for specificity in a § 241 prosecution to permit proof of interference with the right to vote in a local election to satisfy that charge.

 The government argues,[5] however, that evidence that defendant conspired to cause false ballot applications to be prepared and used in a primary election warrants the inference that the conspirators intended to cause false votes to be cast for federal candidates.[6] We reject this argument.

The reasonableness of any inference depends, of course, on the facts which are claimed to support it. In the *Anderson* case the primary thrust of the conspiracy was to affect the local election. Nevertheless, the Supreme Court concluded that an inference that the defendants also intended to taint the federal election was supported by three factors: fraudulent federal votes were in fact cast;[7] there was testimony that members of the conspiracy were instructed to vote for federal as well as local candidates;[8] and there was a reasonable basis for assuming that the desire to conceal the distortion in the local tally provided

---

**2.** The question is whether a citizen's right to vote in a state or local election is a "right or privilege secured to him by the Constitution or laws of the United States" within the meaning of § 241.· *See* n. 1, *supra*. In United States v. Anderson, 481 F.2d 685 (1973), the Fourth Circuit held that the statute applies to local elections, but Mr. Justice Douglas has expressed the contrary opinion. *See* Anderson v. United States, 417 U.S. at 236–245, 94 S.Ct. 2253.

**3.** Paragraph 1 of the indictment described the Democratic and Republican primary elections on March 21, 1972, as held "for the purpose of nominating, among others, candidates for the offices of United States Senator and United States Representatives in Congress from the Congressional Districts of Illinois." Paragraph 2 refers to the citizens entitled to cast votes "for nomination for said federal offices." Paragraphs 3, 4, and 5 also refer to the citizen's right to vote for candidates for "said federal offices." The indictment does not expressly charge any intent to affect, or any actual effect on, any state or local contest.

**4.** *See* n. 3, supra.

**5.** This argument was not made in the government's brief; it was advanced at oral argument as a reason why we need not reach the question reserved in *Anderson*. *See* n. 2, supra.

**6.** We agree with the government that a conspiracy to commit vote fraud need not be successful to constitute an offense under § 241. United States v. Morado, 454 F.2d 167, 169 (5th Cir. 1972), cert. denied, 406 U.S. 917, 92 S.Ct. 1767, 32 L.Ed.2d 116.

**7.** For example, 348 votes were recorded as cast for candidates for the nomination for United States Senator even though a maximum of only 306 electors could have voted. *See* 417 U.S. at 215 n. 3, 94 S.Ct. 2253. The Court expressly relied on this evidence. *Id.* at 225, 94 S.Ct. 2253.

**8.** Unindicted co-conspirator Elswick described the instructions which defendants gave on how to win the election and testified that they emphasized the need for putting "all the votes" on the machine, 417 U.S. at 224, 94 S.Ct. 2253.

motivation for increasing the federal count.[9]

No comparable facts are disclosed by this record. There is no direct evidence that any fraudulent votes were cast for the federal offices,[10] and no testimony describing any intention to cast false votes in the federal election or suggesting any motive to do so. The nature of the election, involving a highly publicized contest for the Democratic nominations for Governor of Illinois and State's Attorney of Cook County, with relatively little interest in the federal contests, obviated any special concern that disparate totals might give the results a suspect appearance.[11] There is, of course, no "straight ticket" voting in a party primary election; nor, unlike the situation in *Anderson*, is there any evidence that the conspirators viewed certain candidates on the federal portion of the primary ballot as part of a "slate" to be voted in its entirety. Accordingly, although the existence of 29 fraudulent ballot applications may justify an inference that a like number of fraudulent votes were cast, they do not warrant the further inference that those votes were cast for federal candidates—particularly when the statistical evidence demonstrates that some of the false votes were cast for local candidates and that evidence is consistent with the hypothesis that none of those votes was cast for any federal candidate.

On this record the evidence does not warrant the "inference upon inference"[12] the government asks us to draw. There was a failure to prove that the conspiracy had any impact on the federal election or that defendant Bradberry had any intent to affect the federal contest.

The offense charged in the indictment was not proved.

Reversed.

9. "True, there was little discussion among the conspirators of the federal votes *per se*, just as there was little discussion of the Hager votes in and of themselves, but the jury could believe this was only a reflection of the conspirators' underlying assumption that false votes would have to be cast for entire slates of candidates in order to have their fraud go undetected." *Id.* at 225, 94 S.Ct. at 2263.

10. This case is, therefore, unlike our recent decisions in United States v. Barker, 514 F.2d 1077 (7th Cir., 1975), and United States v. Bryant, 516 F.2d 307 (7th Cir., 1975), where actual evidence of an effect on the federal races was found.

11. Government Exhibit 14, the official canvass sheet, shows that in the 24th Precinct of the 34th Ward in Chicago 214 Democratic ballot applications were completed. In the uncontested races for the Democratic nominations for the offices of United States Congressman, Illinois Attorney General, Illinois Secretary of State, Illinois Comptroller, Illinois State Senator, Cook County Recorder of Deeds, and Cook County Coroner, as few as 72 and no more than 97 votes were actually cast. In the two-way race for the party's nominations for United States Senator and Illinois Lieutenant Governor, only 105 and 101 votes were cast. One-hundred fifty votes were cast in the two-way race between Eugene McCarthy and Edmund Muskie in the Presidential primary. In the two most hotly contested races, Illinois Governor and Cook County State's Attorney, 187 votes were cast. The government's evidence demonstrated that there were at most 29 false Democratic ballot applications. Thus, the evidence showed that at least two of the votes for Governor and State's Attorney were fraudulent. Assuming, however, that the conspirators actually voted all 29 applications, it is apparent that such votes could do little if anything to dissipate the significant disparities between the vote totals for the various offices. We can find no evidence in the record that such an effort was undertaken by the members of the conspiracy.

12. "Without the knowledge, the intent cannot exist. . . . Furthermore, to establish the intent, the evidence of knowledge must be clear, not equivocal. . . . This, because charges of conspiracy are not to be made out by piling inference upon inference, thus fashioning . . . a dragnet to draw in all substantive crimes." Direct Sales Co. v. United States, 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674.