**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Danny Lee ANDERSON,
Defendant–Appellant.**

**No. 87–5659.**

United States Court of Appeals,
Fourth Circuit.

Argued May 6, 1988.
Decided July 14, 1988.

Barry L. Proctor, Abingdon, Va., for defendant-appellant.

Jerry W. Kilgore, Asst. U.S. Atty. (John P. Alderman, U.S. Atty., on brief), Roanoke, Va., for plaintiff-appellee.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

MURNAGHAN, Circuit Judge:

On August 21, 1985, Danny Lee Anderson, the appellant, was charged with unlawful possession of an unregistered silencer for use on a .45 caliber handgun. In the district court, Anderson filed a Motion to Suppress the introduction of the silencer. After a hearing, Anderson's Motion to Suppress was denied. Pursuant to a plea agreement with the United States Attorney, which preserved the right to raise the issue on appeal here presented for our attention, Anderson was sentenced to five years.

During an investigation of the murder of Richard Allen Jones, an Investigator for the Commonwealth of Virginia, David Mullins, obtained a warrant to search the residence of Anderson for a .45 caliber pistol and a silencer attachment. In his application for a search warrant, Mullins presented evidence that Anderson had offered to sell the pistol and the silencer to three informers. The evidence also showed that Anderson had told the informers that "the gun for sale was used to kill somebody." To one informer, Anderson said the gun for sale was used to kill Richard Allen Jones. During the search pursuant to the warrant of Anderson's trailer, Mullins found the pistol and the silencer.

On August 18, 1985, Wise County, Virginia, arrested Anderson and charged him with the murder of Jones. A jury convicted Anderson on the first degree murder charge.

The primary question confronting us is whether the magistrate acted properly in issuing a warrant for the search of Anderson's home. In *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), the Supreme Court explained that:

> The task of the issuing magistrate is simply to make a practical, common sense decision whether given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, that there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing magistrate is simply to ensure that the magistrate had a substantial basis for concluding the probable cause existed.

Anderson, on appeal, argues that the search warrant was defective because the affidavit submitted by Mullins to obtain it

contained absolutely no facts or conclusions that the pistol and the silencer were located in Anderson's residence. He contends, therefore, that there was no probable cause to believe that the pistol and the silencer would be found in the residence. The government argues, on the other hand, that it was reasonable to assume that individuals keep weapons in their homes, particularly in the case of Anderson.

There appears to be a split among the circuits as to whether probable cause can be inferred from circumstances such as the one in the instant case. The Fifth, Sixth, Eighth, and Ninth Circuits have held that the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence. *United States v. Jacobs*, 715 F.2d 1343, 1346 (9th Cir.1983) (it was reasonable for the magistrate to conclude that articles of clothing would remain at the residence); *United States v. Steeves*, 525 F.2d 33, 38 (8th Cir.1975) (people who own pistols generally keep them at home or on their persons); *United States v. Rahn*, 511 F.2d 290, 293 (10th Cir.1975), *cert. denied*, 423 U.S. 825, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975) (it was reasonable to assume that individuals keep weapons in their homes); *Bastida v. Henderson*, 487 F.2d 860, 863 (5th Cir.1973) (a very likely place to find the pistols would either be on the persons of the assailants or about the premises where they lived).

In contrast, the Eleventh Circuit has held that there must be a "substantial basis" to conclude that the instrumentalities of the crime will be discovered on the searched premises. *United States v. Lockett*, 674 F.2d 843, 846 (11th Cir.1982). *See also United States v. Charest*, 602 F.2d 1015, 1017 (1st Cir.1979) (there is nothing in the affidavit from which a factual finding could be made that the gun used in the shooting was located at defendant's premises).

While the Fourth Circuit has not ruled on the exact issue, we have touched on it in two seemingly conflicting opinions. In *United States v. Johnson*, 726 F.2d 1018 (4th Cir.1984), the defendant's prosecution for unlawful possession of unregistered devices arose out of an investigation into certain bombings. A warrant was issued for the defendant's automobile on the basis that if a bomb containing explosive black powder was either carried or assembled in the automobile, a residue would be found there. The defendant challenged the sufficiency of the affidavit and argued that there was no nexus between his automobile and the items connected with the alleged crime. This Court held that, because of the nature of the crime and the distances involved, it was reasonable for the magistrate to believe that the defendant's automobile was a place likely to produce relevant evidence. *Id.* at 1021–22. In contrast, in *United States v. McCall*, 740 F.2d 1331, 1337 (4th Cir.1984), the Court explained in *dictum* that the warrant in that case would have been defective if the item to be seized had been "the kind of property that could have been easily exchanged or sold or if there had not been positive evidence of McCall's intention to retain it in his residence."

■ While the good faith exception under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) may be sufficient to insulate the warrant from the attack which the defendant has sought to launch, in view of the fact that we have two seemingly conflicting opinions, we believe that it would be helpful to law enforcement officials and future defendants for us to resolve this issue. We find the holding in *Johnson* and that of the Fifth, Sixth, Eighth, and Ninth Circuits to be more persuasive. It was reasonable for the magistrate to believe that the defendant's gun and the silencer would be found in his residence. Therefore, even though the affidavit contained no facts that the weapons were located in defendant's trailer, we reject his argument that the warrant was defective.

■ We, however, are troubled by the fact that there is no disclosure in the warrant, or in the affidavit, of either the date of the crime or the date upon which the defendant had offered to sell the pistol to the informants. It is not disputed that the warrant was issued on July 31, 1985 in connection with the investigation of a murder committed on June 19, 1985. The affidavit does state that the law enforcement

officer was contacted by one of the informants only seventy-two hours before he sought the warrant. However, the affidavit is silent as to when the defendant offered the pistol to the informants. Nevertheless, the "good faith" exception under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) is available. We, therefore, affirm. There was no dispute over whether the magistrate or the investigator acted in good faith and we do not find the warrant to be facially defective.[1]

AFFIRMED.

---

1. We question whether the defendant has even raised the staleness issue. We wish, nevertheless, to emphasize that sloppily prepared or executed warrants directly affront the Fourth Amendment to the United States Constitution. While *Leon* was present here to rescue a possibly defective warrant, judicial officers and policemen should exercise care to see their warrants and supporting affidavits are correct for the saving effect of *Leon* or other rescue operations will be by no means necessarily sufficient in another case.