**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Michael L. LAMON, also known as Michael L. Anthony, also known as Michael L. Black, Defendant–Appellant.**

**No. 90–1407.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 1, 1990.

Decided April 22, 1991.

Chris R. Larsen, Asst. U.S. Atty. and Rodney Cubbie, Office of the U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

James M. Shellow and Robert R. Henak, Shellow, Shellow & Glynn, Milwaukee, Wis., for defendant-appellant.

Before CUMMINGS, FLAUM, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Michael Lamon was indicted for violating 21 U.S.C. § 846 (conspiracy to possess with intent to distribute cocaine), 21 U.S.C. § 841(a)(1) (possession with intent to distribute), and 18 U.S.C. § 924(c)(1) (use or possession of a firearm during and in relation to a drug trafficking crime). After a jury trial, he was convicted on all three counts. On appeal, Mr. Lamon challenges the admission of evidence seized pursuant to two search warrants, the sufficiency of the evidence supporting his conspiracy and firearms convictions, and the forfeiture order related to his drug convictions. For the following reasons, we reverse his conspiracy and firearms convictions. We also vacate his sentence.

## I

## BACKGROUND

A. *Facts*

On July 31, 1989, City of Milwaukee police officers obtained a state-court search warrant for a house and automobile and for the person of a John Doe, also known as "Mike." Detective John Pipal submitted an affidavit based on information from a confidential informant. According to the informant, within the past seventy-two hours, "Mike" had sold cocaine out of the house and had more than one ounce left after that sale. The informant also indicated that, on one unspecified occasion, "Mike" had sold drugs from his automobile, which had Wisconsin license plates inscribed "Lamon 2." Furthermore, Detective Pipal's affidavit indicated that "based upon his training and experience he knows that illicit drug dealers often use their automobiles to deliver drugs to their customers and often store drugs and paraphernalia related to the sale of these drugs in these automobiles." Appellant's Separate App. at 86–87 (affidavit at 5–6).

According to testimony presented at Mr. Lamon's trial, police executed the warrant the next morning at 3321 North 24th Place, Milwaukee. They found the defendant in bed. Mr. Lamon indicated that he sometimes slept at this home but that it was not his permanent residence. Under Mr. Lamon's pillow, police found a loaded handgun. Police officers also seized from the residence a cellular telephone, two beepers, and a black plastic gram scale. Inside Mr. Lamon's blue jeans were found approximately $400 and a small quantity of cocaine.

Mr. Lamon acknowledged that a black Pontiac, which had a license plate inscribed "Lamon 2" and was parked in front of the residence, belonged to him. Detective Pipal searched the automobile and found a duffle bag containing approximately 2.7 kilograms of cocaine, a centigram balance scale, drug packaging materials, and a cutting agent often used to increase the weight of cocaine. In a map holder attached to the car seat, he found a piece of paper, containing several names or sets of initials and various amounts, which he testified "appear to me to be indications of drug transactions." Tr. at 148 (identifying Government Exhibit 73). The entries that were associated with specific names or initials ranged from $200 to $6,800, and one was marked "paid." Other than a preprinted date of August 1985, which appeared in a corner of the piece of paper, the exhibit contained no indications of when the entries had been made or why they had been made.

After officers seized these items from 3321 North 24th Place and from the defendant's automobile, Detective Pipal returned to state court and obtained a search warrant for Mr. Lamon's principal residence, 2879 North 39th Street, Milwaukee. When seeking the second warrant, Detective Pipal indicated that a confidential informant had told him that Mr. Lamon dealt drugs only from the North 24th Place house and from his car. Nonetheless, Detective Pipal justified his request in the following manner:

> The reason that I would like this residence to be searched is based on nine years of investigating traffic—drug trafficking in the Milwaukee area and conducting hundreds of investigations. I have found that oftentimes, major dealers will have one residence as a place that they live, and they will often sell their drugs out of another residence that they stay at on a semi-permanent basis, and that they also sell out of their cars.

> I find in many instances they keep moneys, drug records, and other additional quantities of drugs, including cocaine, at the residence they do not sell out of.

Appellant's Separate App. at 96 (search warrant Tr. at 7).

Armed with the second warrant, Detective Pipal and other officers went to Mr. Lamon's principal residence later on August 1, 1989. They found approximately $110,000 in cash and four firearms at various locations in the house. Other items seized included a triple-beam scale, a gram scale, disposable vinyl gloves, and paper masks.

### B. District Court Proceedings

A grand jury indicted Mr. Lamon on three counts. The first count charged a conspiracy to possess with intent to distribute more than five kilograms of cocaine during the period from January 1, 1989 to August 2, 1989. Mr. Lamon also was charged with possession with intent to distribute approximately three kilograms of cocaine (count two) and with using or carrying one or more of the five seized firearms during and in relation to a drug trafficking crime (count three). The indictment expressly tied the firearms count only to the conspiracy count, not to the possession count. The indictment included a criminal forfeiture provision pursuant to 21 U.S.C. § 853.[1] It called for forfeiture of Mr. Lamon's automobile and cash seized during the execution of the two search warrants.

Mr. Lamon moved to suppress the results of the searches of both residences and his automobile. A magistrate issued a written recommendation that these motions be denied, and the district court denied the motions on October 19, 1989. Evidence seized on the basis of both search warrants was introduced at Mr. Lamon's jury trial. Testimony at the trial related largely to events surrounding the execution of the search warrants and testing of the seized cocaine. In addition, prosecution witnesses testified about the typical operation of drug distribution networks and about the possible uses in the drug trade of some of the items seized from Mr. Lamon's automobile and residences. At the close of the government's case, Mr. Lamon's counsel moved for acquittal on the conspiracy and firearms counts.[2] The district court denied these motions.

The jury returned guilty verdicts on all three counts, determining by special interrogatory that the amount of cocaine involved in the charged conspiracy was at least 500 grams but less than five kilograms. The jury also returned a special verdict forfeiting Mr. Lamon's interest in $113,148 seized from his principal residence and $3,836 seized from his automobile. (The forfeitability of Mr. Lamon's automobile was not submitted to the jury. See Appellee's Br. at 4.). The district court entered an Order of Forfeiture based on this verdict. The court also denied Mr.

---

1. Section 853 authorizes forfeiture of proceeds of and property used to commit a violation of federal drug crimes by "[a]ny person convicted of a violation" of any provision of 21 U.S.C. ch. 13 that is "punishable by imprisonment for more than one year." 21 U.S.C. § 853(a).

2. See Fed.R.Crim.P. 29(a).

Lamon's post-trial motion for acquittal on counts one and three,[3] or, in the alternative, for a new trial.[4] The court sentenced Mr. Lamon to concurrent terms of seventy months on counts one and two and a consecutive term of sixty months on count three. It also imposed supervised release for a term of four years (four years on each of counts one and two, and three years on count three, all three terms to run concurrently). Mr. Lamon filed a timely notice of appeal.

## II

### ANALYSIS

#### A. *Suppression of Evidence*

Mr. Lamon challenges the introduction of evidence seized pursuant to the two search warrants. He contends that the information that he allegedly had sold cocaine out of the North 24th Place house within the last seventy-two hours was "stale" and thus insufficient to establish probable cause that evidence of criminal activity would be found when the search warrant was issued and executed. Appellant's Br. at 41. He further contends that there was no probable cause to support the search of his automobile, because Detective Pipal's affidavit gave no indication *when* the confidential informant allegedly had witnessed Mr. Lamon selling drugs from the automobile. Because the search warrant for his principal residence was based on information gathered in the execution of the first warrant, he challenges the second warrant as being based on the fruits of an illegal search. Finally, he argues that, even if the searches pursuant to the first warrant were legal, the second warrant was unsupported by probable cause.

#### 1. Guiding principles

■ In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court clarified the task both of

officials[5] who issue search warrants and of reviewing courts:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Id.* at 238–39, 103 S.Ct. at 2332 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960), *overruled on other grounds, United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)); *see United States v. Romo*, 914 F.2d 889, 897 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (U.S.1991); *United States v. Barnes*, 909 F.2d 1059, 1068 (7th Cir.1990). Because of the Supreme Court's "strong preference for warrants," it has "declared that 'in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall.'" *United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984) (quoting *United States v. Ventresca*, 380 U.S. 102, 106, 85 S.Ct. 741, 744–45, 13 L.Ed.2d 684 (1965)). A reviewing court must determine deferentially whether the "totality of the circumstances" indicated the existence of probable cause. *United States v. McKinney*, 919 F.2d 405, 408 (7th Cir.1990). At the same time, we review *de novo* the determination by the district court that the magistrate had a substantial basis for finding probable cause. *Id.* at 408 n. 2.

■ In determining whether probable cause exists, magistrates should consider, as one factor, the age of the information in

---

**3.** *See* Fed.R.Crim.P. 29(c).

**4.** *See* Fed.R.Crim.P. 33.

**5.** In this case, the search warrants were issued by a state-court judge and commissioner. For

purposes of analyzing whether probable cause existed to issue a warrant, the role of such officials does not differ from that of the magistrates referred to in some of the cited cases.

the supporting affidavit. *United States v. Batchelder*, 824 F.2d 563, 564 (7th Cir. 1987). However, "[i]f other factors indicate that the information is reliable and that the object of the search will still be on the premises, then the magistrate should not hesitate to issue a warrant." *Id.* Furthermore, "where the affidavit recites facts indicating ongoing, continuous criminal activity, the passage of time becomes less critical." *United States v. Shomo*, 786 F.2d 981, 984 (10th Cir.1986) (dicta).[6] Indeed, at least one circuit has recognized that probable cause may be found "several weeks, if not months," after "the last reported instance of suspect [drug-trafficking] activity." *United States v. Angulo–Lopez*, 791 F.2d 1394, 1399 (9th Cir.1986).[7]

Warrants may be issued even in the absence of "[d]irect evidence linking criminal objects to a particular site." *United States v. Jackson*, 756 F.2d 703, 705 (9th Cir.1985); *see also United States v. Malin*, 908 F.2d 163, 165 (7th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990).[8] An issuing court " 'is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.' " *Id.* at 166 (quoting *Angulo–Lopez*, 791 F.2d at 1399). "In the case of drug dealers, evidence is likely to be found

where the dealers live." *Angulo–Lopez*, 791 F.2d at 1399.

2. Application to this case

a. North 24th Place house

■ The state judge in this case had a substantial basis for issuing the search warrant for Mr. Lamon's part-time residence. Detective Pipal's affidavit contained more than merely "the conclusory statements of an investigating officer." *Romo*, 914 F.2d at 898. The confidential informant provided information that Mr. Lamon recently had sold cocaine out of that residence, that Mr. Lamon still had more than an ounce of cocaine remaining after the sale, and that he also sold drugs from an automobile parked in front of that residence. Taken together, this information suggested a pattern of ongoing criminal activity. Consequently, the age of the information (seventy-two hours) was not critically deficient.[9] The evidence indicating the reliability of the informant also was adequate. He had made one prior successful "controlled buy" and had provided information that led to the issuance of an earlier search warrant and the indictment of two individuals on drug charges.[10]

b. automobile

■ Because the affidavit did not indicate when the informant had observed Mr.

---

**6.** *Accord United States v. Williams*, 897 F.2d 1034, 1039 (10th Cir.1990); *see also United States v. Landis*, 726 F.2d 540, 542 (9th Cir.), *cert. denied*, 467 U.S. 1230, 104 S.Ct. 2688, 81 L.Ed.2d 882 (1984).

**7.** *Cf. United States v. Williams*, 897 F.2d 1034, 1039 (10th Cir.1990) (in case involving long-term conspiracy, noting likelihood that "records, together with the fruits and instrumentalities of such an extensive criminal enterprise are likely to be present for some time"); *United States v. Nocella*, 849 F.2d 33, 40 (1st Cir.1988) ("By its very nature, drug trafficking, if unchecked, is apt to persist over relatively long periods of time.").

**8.** *But cf. United States v. Anderson*, 851 F.2d 727, 729 (4th Cir.1988) (suggesting that the Eleventh Circuit has taken a different view in *United States v. Lockett*, 674 F.2d 843, 846 (11th Cir. 1982), when it required "a 'substantial basis' to conclude that the instrumentalities of the crime will be discovered on the searched premises"),

*cert. denied*, 488 U.S. 1031, 109 S.Ct. 841, 102 L.Ed.2d 973 (1989).

**9.** *Cf. Romo*, 914 F.2d at 898 (approving a warrant issued based on observation and purchase of cocaine within 72 hours preceding warrant application); *People v. Halliday*, 73 Ill.App.3d 615, 29 Ill.Dec. 832, 834, 392 N.E.2d 389, 391 (1979) (reversing trial court that quashed search warrant based on observation of heroin within four days preceding warrant application: "The trial court was ... of the opinion that since the small packets had been seen in a house of prostitution they would remain in existence a shorter time. Such a presumption is of course speculation only and the opposite could be argued based upon the presumption that the house of ill repute was an outlet for the sale and delivery of unlawful drugs.").

**10.** *Cf. Romo*, 914 F.2d at 898 (four prior controlled buys and information on two prior occasions leading to drug charges against three individuals).

Lamon dealing drugs from his automobile, that information standing alone would be insufficient to establish probable cause.[11] However, Detective Pipal's affidavit did offer more. The informant discussed a *recent* cocaine sale out of the house in front of which Mr. Lamon parked his automobile. Taken together, these pieces of information suggested a pattern of drug trafficking that involved both the house and the automobile. Furthermore, Detective Pipal indicated that, based on his nine years of experience in Milwaukee's Drug Enforcement Unit, he knew that drug dealers often store drugs and drug paraphernalia in their automobiles. Although conclusory statements without more do not provide a substantial basis for finding probable cause,[12] issuing magistrates are "entitled to take into account" the experience of officers whose affidavits explain the significance of specific types of information. *See Batchelder*, 824 F.2d at 564. We conclude that Detective Pipal's affidavit provided a substantial basis to support the issuance of the search warrant for Mr. Lamon's automobile.

■ The government contends that, even if we concluded that the search warrant was unsupported by probable cause, the district court's refusal to suppress the fruits of the warrant would provide no basis to reverse the convictions in this case. We agree. The Supreme Court held in *Leon*, 468 U.S. at 926, 104 S.Ct. at 3422, that an officer's good-faith reliance on a magistrate's determination of probable cause should not lead to the exclusion of probative evidence simply because a reviewing court later ruled that probable cause did not exist:

> In the absence of an allegation that the magistrate abandoned his detached and

neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.[13]

The *Leon* limitation on the exclusionary rule was applied to a situation similar to this case in *United States v. Anderson*, 851 F.2d 727 (4th Cir.1988), *cert. denied*, 488 U.S. 1031, 109 S.Ct. 841, 102 L.Ed.2d 973 (1989). The defendant in *Anderson* allegedly had offered to sell informants a pistol that, he bragged, had been used to kill someone. *Id.* at 728. However, the affidavit in support of the search warrant issued in the case lacked any explicit indication of when the crime had been committed or when the offer to sell the pistol had been made. *Id.* at 729.[14] Despite expressing misgivings about "sloppily prepared" warrants, *id.* at 730 n. 1, the Fourth Circuit concluded that "[t]here was no dispute over whether the magistrate or the investigator acted in good faith and we do not find the warrant to be facially defective." *Id.* at 730. Therefore, relying on the "good faith" exception of *Leon*, the court affirmed the conviction. *Id.*[15]

In Mr. Lamon's case, Detective Pipal erred in not indicating when the informant had witnessed drugs being sold from Mr. Lamon's automobile. Nonetheless, in light of the pattern of illicit activity involving the residence and automobile, which we have already discussed, we cannot conclude that Detective Pipal had no objectively reasonable belief that there existed probable cause to support the warrant issued on the basis of his affidavit. We also find no evidence in the record of dishonesty or

**11.** *See, e.g., United States v. Button*, 653 F.2d 319, 325 (8th Cir.1981); *Rosencranz v. United States*, 356 F.2d 310, 316–17 (1st Cir.1966); *United States v. Elliott*, 576 F.Supp. 1579, 1580–81 (S.D.Ohio 1984).

**12.** *See Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983).

**13.** In *Leon*, the search warrant had been issued on the basis of an informant's knowledge that later was deemed to be "fatally stale." 468 U.S. at 904, 104 S.Ct. at 3410.

**14.** The murder had been committed on June 19, 1985, and the warrant was issued on July 31, 1985. 851 F.2d at 729.

**15.** *But see Nelms v. State*, 568 So.2d 384, 388 (Ala.Crim.App.1990) (declining to follow *Anderson's* application of good faith exception because "there was no reference at all in the affidavit as to when the informant saw the narcotics at the appellant's residence").

recklessness in the application for the warrant.[16] Therefore, even were we convinced that the warrant was unsupported by probable cause, we conclude that *Leon's* good faith exception applies in this case.

c. North 39th Street house

■ Because we hold that the first warrant was valid, we cannot accept Mr. Lamon's contention that the second warrant was based on the fruits of an illegal search. We still must address, however, his contention that the second warrant was unsupported by probable cause.

When the police arrested Mr. Lamon at the North 24th Place house, they found considerable evidence that linked him to illegal drug dealing. He told them that this house was not his permanent residence, and police recovered identification that listed his address as 2879 North 39th Street. Moreover, Detective Pipal reported that his confidential informant had indicated that Mr. Lamon lived at the North 39th Street residence. Even though the informant indicated that Mr. Lamon sold drugs only out of the North 24th Place house and his car, the specific evidence already seized—along with Detective Pipal's experience that drug dealers often hide money, drugs, and other incriminating evidence at their permanent residences—provided a substantial basis for a finding of probable cause. *See Malin,* 908 F.2d at 166; *Angulo–Lopez,* 791 F.2d at 1399.

B. *Sufficiency of the Evidence*

Mr. Lamon submits that the evidence was insufficient to support, as a matter of law, his conviction of conspiracy. Specifically, he contends that the record evidence cannot support the jury's conclusion that he was involved in an illegal "combination or confederation" with another individual. Appellant's Br. at 15. Moreover, he argues that, if his conspiracy conviction is reversed on appeal, his derivative firearms conviction also must be reversed.

1. Guiding principles

An appellant who challenges his conviction based on insufficiency of evidence bears a "heavy burden." *United States v. Sullivan,* 903 F.2d 1093, 1098 (7th Cir. 1990). "The test is whether, after viewing the evidence in the light most favorable to the government, '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Pritchard,* 745 F.2d 1112, 1122 (7th Cir.1984) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)); *accord Sullivan,* 903 F.2d at 1098.

A conspiracy is a "combination or confederation between two or more persons formed for the purpose of committing, by their joint efforts, a criminal act." *United States v. Hedman,* 630 F.2d 1184, 1192 (7th Cir.1980), *cert. denied,* 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981); *accord Sullivan,* 903 F.2d at 1098. "The essential elements of conspiracy under [21 U.S.C. § 846] are the existence of an agreement between two or more individuals, with the intent to commit an offense in violation of the Controlled Substance Act." *United States v. Sweeney,* 688 F.2d 1131, 1140 (7th Cir.1982). "The government must prove that the defendant (1) knew of the conspiracy, and (2) intended to associate himself with the criminal scheme. The basis for punishing a conspiracy separate from the underlying crime is the recognition that a combination of criminals can do more harm than individual criminals acting alone." *Sullivan,* 903 F.2d at 1098 (citations omitted).

This court has frequently recognized that the government may use "circumstantial evidence as support, even sole support, for a [conspiracy] conviction." *United States v. Durrive,* 902 F.2d 1221, 1229 (7th Cir.

---

**16.** There is one minor discrepancy between Detective Pipal's descriptions of his informant's record for reliability, as contained in the affidavit supporting the first warrant compared to his testimony when requesting the second warrant. In the former, Detective Pipal indicated that the informant's efforts had led to charges being filed against two individuals. In the latter, he indicated that only one of the two individuals arrested had been charged. We do not find this discrepancy so material as to warrant a different conclusion.

1990).[17]

"The government need not establish that there existed a formal agreement to conspire; circumstantial evidence and reasonable inferences drawn therefrom concerning the relationship of the parties, their overt acts, and the totality of their conduct may serve as proof." *United States v. Redwine*, 715 F.2d 315, 320 (7th Cir.1983), *cert. denied*, 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984). Nor is it necessary that the government prove that the defendant knew the other members of the conspiracy or its details.

*Sullivan*, 903 F.2d at 1098 (citations omitted). Nonetheless, this court also has "stated frequently that the existence of a mere buyer-seller relationship alone is insufficient to support a conspiracy conviction." *United States v. Kimmons*, 917 F.2d 1011, 1015 (7th Cir.1990). "This is because the crime of conspiracy involves a concert of action between two or more persons for a common purpose." *United States v. Molinaro*, 877 F.2d 1341, 1347 (7th Cir.1989); *accord Sullivan*, 903 F.2d at 1099. We recently noted that even a large-scale purchase, which might support an inference that the seller knew that the buyer intended to resell the illegal drugs, was insufficient to support a conspiracy conviction. *See United States v. Baker*, 905 F.2d 1100, 1106 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 206, 112 L.Ed.2d 167 (1990).[18] The court in *Baker* also noted that, at least in the absence of evidence of "repeat purchases or some other enduring arrangement that implies knowledge of the scope of the conspiracy," we shall not affirm a conviction merely on the basis of credit sales, even though a credit arrangement could "support an inference that [the buyer] became a co-venturer by a profit-sharing arrangement." *Id.*

2. Application to this case

On the basis of the record before us, we must conclude that, as a matter of law, a rational jury could not find Mr. Lamon guilty beyond a reasonable doubt of *conspiracy* to possess with intent to distribute. The government submits that the quantity of cocaine seized from Mr. Lamon's automobile indicates that the cocaine was intended for resale. Moreover, the

---

**17.** *See also, e.g., Sullivan*, 903 F.2d at 1098. In *Durrive*, we made clear that an appellate court "should review challenges to the sufficiency of evidence of a conspiracy's existence and an individual defendant's connection to the conspiracy under the same 'substantial evidence' standard we apply to sufficiency challenges in nonconspiracy criminal appeals." 902 F.2d at 1228 n. 5. This standard applies to this case, even though Mr. Lamon's trial was held prior to the *Durrive* decision. *See United States v. Kimmons*, 917 F.2d 1011, 1015 n. 5 (7th Cir.1990).

**18.** *See also United States v. Kimmons*, 917 F.2d 1011, 1016 (7th Cir.1990) (indicating that evidence of purchase of 32 grams of cocaine is insufficient to support inference that seller knew buyer intended to resell cocaine); *Sullivan*, 903 F.2d at 1094, 1099 (reversing conspiracy conviction of courier arrested with one and one-half kilograms of 95% pure cocaine).

The government contends that "'the quantity of drugs transacted, and in particular whether the amount is within a reasonable range for personal consumption,' is evidence both of a concert of action, and the parties' intent to distribute the cocaine they conspired to possess." Appellee's Br. at 14 (quoting *United States v. Koenig*, 856 F.2d 843, 854 (7th Cir.1988)). In *Koenig*, the court affirmed co-defendant Graf's conviction for conspiracy to distribute cocaine. 856 F.2d at 854–55. Graf had contended that the evidence at trial "established only that he was a customer of Koenig rather than a full-fledged member of her conspiracy." *Id.* at 854. The court concluded, however, that the evidence showed that Graf was more than an occasional purchaser of drugs for personal use. Graf knew that Koenig was obtaining cocaine from a source in Florida. He allowed Koenig to use his scales to weigh one such shipment. Moreover, Graf purchased large amounts of cocaine; within a three-month period, Graf purchased 300 grams of cocaine from Koenig for approximately $20,000. A prosecution expert testified that the quantity and quality of cocaine Graf purchased would not be for personal use but for redistribution. On this evidence a jury could reasonably have found that Graf knew of Koenig's extensive drug dealings, aided them in some ways, and furthered the goals of a conspiracy by distributing cocaine. *Id.* at 854–55. This court's rulings in *Baker* and *Kimmons*—and its adoption of the "substantial evidence" rule in *Durrive, see supra* note 17— make clear that evidence of large quantities of controlled substances, without more, cannot sustain a conspiracy conviction. *Koenig*, unlike this case, fits comfortably within this principle. There was substantial evidence in *Koenig* that the defendant was aware of the nature and scope of the conspiracy.

government contends that a piece of paper found in Mr. Lamon's automobile (Government Exhibit 73), characterized by the government as a "drug ledger,"

> demonstrates that the defendant had an ongoing series of dealings with several individuals, including the making of drug sales to those individuals on credit. As such, the evidence undeniably supports the jury's finding of a "concert of action" to possess with intent to distribute drugs between the defendant and others listed in the drug ledger.

Appellee's Br. at 13 (quoting *United States v. Koenig*, 856 F.2d 843, 854 (7th Cir.1988)).

As Mr. Lamon concedes, the evidence is sufficient to support his conviction of possession with intent to distribute cocaine. But this evidence, without more, does not permit the jury to conclude that Mr. Lamon *conspired* with others to commit the crime. As we have already noted, our cases establish that possession of a significant quantity of illegal drugs does not, standing alone, necessarily support the conclusion that the defendant's activity is conspiratorial in nature. Moreover, the slip of paper—characterized by the government as a "drug ledger"—is insufficient to support a *conspiracy* conviction, even when evaluated in the context of the other evidence—the drugs, cash, drug paraphernalia, and firearms.[19]

First of all, the entries on the slip of paper are, to put it mildly, equivocal. Detective Pipal's conclusory remark that they "appear" to be drug transactions hardly contributes affirmatively to the inquiry as to whether a *conspiracy* existed. Indeed, as he conceded, the figures do not indicate whether the writer (whoever it was) was keeping a list of accounts payable or receivable. Because one of the entries on the list was marked paid, one might infer that the other entries represented credit sales—unless, of course, the transactions required advance payment. In any event, as Judge Easterbrook noted in *Baker*, 905 F.2d at 1106, even when it is clear that there have been credit sales, such sales will support an inference of a profit-sharing arrangement only when there are "repeat purchases or some other enduring arrangement that implies knowledge of the scope of the conspiracy." Here, there is no such pattern of transactions; only one initial is repeated, and that initial appears only twice.[20] In short, such reasoning "would be grounded on ' "piling inference upon inference," ' a practice disapproved of by the Supreme Court." *Sullivan*, 903 F.2d at 1099 (quoting *Anderson v. United States*, 417 U.S. 211, 224, 94 S.Ct. 2253, 2262, 41 L.Ed.2d 20 (1974) (quoting *Direct Sales Co. v. United States*, 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674 (1943))); *see also United States v. Bradberry*, 517 F.2d 498, 500 (7th Cir.1975). "Criminal convictions are based on facts ... not conjecture." *Sullivan*, 903 F.2d at 1099.[21]

More fundamentally, the absence of any date on this list other than the preprinted date of August 1985 would allow the jury to do no more than speculate that the entries represented transactions during the period of the charged conspiracy (January to August of 1989). Indeed, Detective Pipal conceded on cross-examination that the list itself provided no evidence that would help the jury determine whether the alleged drug transactions occurred during the charged conspiracy. *See* Tr. at 179–81.

---

**19.** The government also introduced into evidence Government Exhibit 63-6, a piece of paper seized from Mr. Lamon's automobile. This exhibit is part of the output of a printout calculator, on which several calculations are recorded. There also are handwritten numbers on both sides of the paper, as well as a notation "¼ lb." This exhibit has no date and no indication of who created it or for what purpose. This exhibit adds no meaningful evidence to the government's conspiracy case against Mr. Lamon.

We have reproduced in the appendix to this opinion both Exhibits 63-6 and 73.

**20.** The government's brief is not correct in its assertion that the exhibit "demonstrates that the defendant had an ongoing series of dealings with several individuals." Appellee's Br. at 13.

**21.** Detective Pipal's abstract discourse on the nature of drug trafficking, never specifically related to the record evidence of this case, is, of course, neither relevant nor probative on the issue of whether *this* defendant knew of the existence and scope of a conspiracy and sought to promote its success. *See Baker*, 905 F.2d at 1106.

Because the derivative firearms conviction was tied, *at the government's election*, only to the conspiracy count, it also must be reversed.[22] This case must be remanded to the district court for resentencing. *See Sullivan*, 903 F.2d at 1099 (citing cases).

## C. *Forfeiture Order*

■ Our reversal of Mr. Lamon's conspiracy conviction requires us to determine whether the forfeiture order can stand. Mr. Lamon submits that our reversal of count one (the conspiracy charge) requires reversal of the forfeiture because it is impossible to tell whether the jury relied on count one or count two in imposing the forfeiture. The special verdict form submitted to the jury provides no way of determining which count or counts the jury considered in reaching its forfeiture verdict.

Forfeiture can be based on a violation of either 21 U.S.C. § 846 (conspiracy) or 21 U.S.C. § 841(a)(1) (possession). *See* 21 U.S.C. § 853(a).[23] Under section 853, the forfeiture provision, the government must do more than prove a drug-related violation to justify forfeiture. Property is to be forfeited if it meets either of the following criteria:

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation....

*Id.*

We believe that our decision in *United States v. Holguin*, 868 F.2d 201, 203 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 97, 107 L.Ed.2d 60 (1989), provides a firm rationale for affirmance of the forfeiture here.[24] In *Holguin*, we distinguished between general jury verdicts that must be reversed on appeal because they "may have been based on a ground that is unconstitutional or otherwise legally deficient"[25] and verdicts that may be affirmed on appeal even though they "may have been based on insufficient evidence as to a matter that the government was not required to prove."[26] On the basis of this prece-

---

**22.** The government conceded at oral argument that this court cannot sustain the firearms conviction if we reverse the conspiracy conviction.

Our disposition of the case makes it unnecessary to address two other issues raised by Mr. Lamon: (1) constructive amendment of the conspiracy count and (2) insufficiency of evidence supporting the firearms conviction.

**23.** *See also United States v. Harris*, 903 F.2d 770, 777 (10th Cir.1990) (affirming forfeiture tied to section 841(a)(1) possession *conviction*).

**24.** One circuit has affirmed a section 853 forfeiture while reversing one of two drug-related convictions. *United States v. Chen*, 913 F.2d 183, 185 (5th Cir.1990). There, the defendant was convicted by the jury of knowingly maintaining a place for the purpose of distributing and using a controlled substance (count one) and knowingly renting property for the purpose of unlawfully storing, distributing, and using a controlled substance (count two). *See id.* at 185. Count one was reversed on appeal because of an erroneous jury instruction, but there was clearly sufficient evidence of record to establish that the forfeited property met the criteria of section 853(a) with respect to count two.

The court in *Chen* offered no analysis in support of its decision to affirm the forfeiture.

**25.** *See Yates v. United States*, 354 U.S. 298, 312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356 (1957) ("ver-

dict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected"), *overruled on other grounds*, *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *United States v. Holzer*, 840 F.2d 1343, 1352 (7th Cir.1988) (vacating RICO conviction when it is unclear that, in absence of vacated predicate offenses, jury could have found two predicate offenses); *see also Crowley v. Winans*, 920 F.2d 454, 456 (7th Cir.1990) ("Because the state relied upon alternative grounds [only one of which involved challenged presumption in jury instruction] and we cannot know which ground formed the basis for the conviction, we must address whether the use of the presumption deprived Crowley of due process.").

**26.** In *Holguin*, the matter that the government did not have to prove was the specific identity of the five or more individuals supervised by the defendant in a continuing criminal enterprise case. 868 F.2d at 202–03; *cf. Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970) ("The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged.").

In *United States v. Beverly*, 913 F.2d 337, 361–65 (7th Cir.1990), *cert. granted sub nom. Griffin*

dent, we conclude that the forfeiture order in this case must be affirmed despite the reversal of Mr. Lamon's conviction on count one.

The forfeited cash certainly could not be proceeds of the cocaine that Mr. Lamon possessed with the intent to distribute on August 1, 1989, the date he was arrested and the date charged in count two. However, on the evidence before it, the jury was entitled to conclude that the cash was intended to facilitate the commission of the crime. While Mr. Lamon already was in possession of the controlled substance, he had not distributed it and the jury was entitled to conclude that the cash was intended to support the operation necessary to effect that distribution. In short, the evidence allowed the jury to conclude that Mr. Lamon was in the drug business and intended to distribute his deadly wares through that business. The money, the jury was entitled to find, was an asset of that business.

## Conclusion

For the foregoing reasons, we affirm Mr. Lamon's conviction of possession with intent to distribute and the forfeiture. We reverse his convictions of conspiracy and use or possession of a firearm during and in relation to a drug trafficking crime.

REVERSED IN PART AND REMANDED FOR SENTENCING.

*v. United States,* —— U.S. ——, 111 S.Ct. 951, 112 L.Ed.2d 1039 (1991), this court affirmed a conviction in a multi-object conspiracy case despite the appellant's contention and the government's concession that there was insufficient evidence to support conviction regarding one of two ob-

jectives of a conspiracy. In *Beverly,* the prosecution had indicated at trial that it "did not contend that Ms. Griffin had conspired to defraud the DEA," the other object of the alleged conspiracy. *Id.* at 365.

# APPENDIX

**TRI - NORINYL**

**Low-dose triphasic oral contraceptive**

(NORETHINDRONE AND ETHINYL ESTRADIOL)

450
226

B.W. 800

125    D.B. 800        125
1250   Sonoy
60     Ty 1800          25  9000
125    S.W. 750         20000
250    J.R. 1800        225
500    G.I. 6800        400        135
       D.B. 3200                   25
       M.S. 0810                   60
       D.W. 200 — Paid 1500
       D.S. 1700          5000
       19360             5000
150                      11500
190    800               19360
425    800               30860
850    1800
1615   500  1000
       1800
800    8500     — 9000
475    3200      5000
       1300      6000
       1400
       600
       600

SYNTEX LABORATORIES, INC.
PALO ALTO CA 94304
ex Laboratories Inc   August 1985   Printed in U.S.A.

GOVERNMENT EXHIBIT 73
10·30·89