UNITED STATES of America, Plaintiff,

v.

Arthur SMITH, Defendant.

No. 94–0274–CR.

United States District Court,
S.D. Florida.

Aug. 4, 1995.

Assistant United States Attorney Richard Getchell, for plaintiff.

F.R. Mann, for defendant.

*ORDER DENYING MOTION TO SUPPRESS EVIDENCE*

HOEVELER, Senior District Judge.

THIS CAUSE comes before the Court upon Defendant Alfred Smith's Motion to Suppress Evidence. On May 18, 1994, a federal magistrate judge issued a warrant to search Defendant's residence. Special Agent Richard Lunn (FBI) submitted an affidavit in support of the warrant. He averred that state and federal law enforcement agencies had begun an investigation of Defendant's drug-trafficking activities in May, 1992. Based on the investigation, the affiant stated that Defendant directed a "well-organized

group of individuals" who sold cocaine in Coconut Grove. Defendant also sold cocaine at his apartment in Coconut Grove. The affidavit also stated that on three occasions, a confidential informant had purchased crack cocaine from Defendant.

The search warrant authorized the federal agents to seize "books, ledgers, balance sheets, telephone and address lists, bank records, money orders, cashiers checks, leases, telephone and utility bills, and U.S. currency, which comprise evidence of a conspiracy to possess with intent to distribute and to distribute cocaine and heroin."

In the early morning of May 19, federal officers executed the warrant for the search of Defendant's apartment. The search team seized eighteen small baggies of crack cocaine and a digital beeper from the bedroom of Defendant's roommate/cousin. In the hall closet, it found a triple-beam scale, a mirror and a razor. Approximately $800 in cash was discovered in the top dresser drawer in Defendant's bedroom. A member of the City of Miami Police Department who participated in the search retrieved bullets and ammunition clips from a crawl space above the hallway.

■ Defendant urges this court to suppress the evidence on several different grounds. First, Defendant argues that the search warrant did not authorize the Government to seize drugs, firearms, ammunition, scales, beepers, cash or photographs. Defendant is correct that the search warrant does not specifically describe these items (with the exception of the cash). However, suppression of this evidence is not warranted because the items were in plain view and thus fall within a recognized exception to the warrant clause. "To justify application of the plain view doctrine, the seizing officer must (1) have independent justification for being in

a position to see the items; (2) must discover the items inadvertently; and (3) must immediately observe that the items are evidence." *United States v. Jenkins*, 901 F.2d 1075, 1081–82 (11th Cir.1990), *cert. denied*, 498 U.S. 901, 111 S.Ct. 259, 112 L.Ed.2d 216 (1990).

All the evidence in question was discovered in locations in which the officers were entitled to look for items described in the search warrant. They, thus, had an independent justification for being in a position to see the items. *United States v. Harrington*, 761 F.2d 1482, 1484 (11th Cir.1985) (finding that items discovered on the top of tables and within drawers and closets were in plain view). The most troubling pieces of evidence are the bullets and ammunition clips which were found in the crawl space, but it is conceivable that the items described in the search warrant could have been hidden in this area. Moreover, the incriminating nature of the items, once discovered, would have been immediately apparent to the officers.

■ Second, Defendant argues that the probable cause for issuing the search warrant was stale because the government waited fifteen weeks to search Defendant's apartment. The confidential informant ("CI") made the first alleged purchase of crack cocaine at Defendant's residence on February 1, 1994.[1] The search warrant was issued on May 18, 1994 and was executed the following day.

Defendant has overlooked important aspects of the supporting affidavit which suggest that probable cause existed as late as March 12, 1994. According to the affidavit, the CI "was advised by Smith that he had weight for sale" on May 10, 1994.[2] Moreover, on May 12, 1994, the CI advised Special

---

1. This was not the only drug transaction involving Defendant's residence. According to the supporting affidavit, the CI stated, "In December, 1993, [he] was present when Smith ordered Lamont Witherspoon to pick up approximately one ounce of crack cocaine from his residence at 3170 Elizabeth Street." On December 16, 1994, Defendant allegedly sold cocaine to the CI and ordered another person to pick up the drugs at his home and deliver it to the CI.

2. In the supporting affidavit, Special Agent Lunn interpreted the word "weight" to mean large amounts of narcotics. Defendant argues that this reference to weight does not link the narcotics to Defendant's residence and thus could not serve as a basis for issuing a warrant to search the property. However, it is not unreasonable to infer from this statement that Defendant's residence was being used to store large amounts of narcotics.

Agent Lunn that "Smith is still using the premises to store narcotics." This was six days before the magistrate judge issued the search warrant. These two later events, combined with the earlier purchase of crack cocaine at the residence, suggest that the probable cause was sufficiently fresh to issue a search warrant.

■ Third, Defendant argues that the scope of the warrant violates the particularity requirement because the financial documents described in the warrant are overly broad and relate to Defendant's personal life, rather than to criminal activity. The Court, however, finds that the seized items are described with sufficient particularity to satisfy the Fourth Amendment. The 11th Circuit has stated, "Th[e] requirement of particularity prevents 'general exploratory rummaging in a person's belongings,' ... but elaborate specificity is unnecessary. The description is considered 'sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized.'" *United States v. Betancourt*, 734 F.2d 750, 754–55 (11th Cir.) (citations omitted), *cert. denied sub nomine, Gerwitz v. United States*, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 365 (1984). In *United States v. Smith*, the 11th Circuit found that a search warrant for "cocaine, documents, letters, photographs, business records, and other evidence relating to narcotics trafficking" was not overbroad. 918 F.2d 1501, 1507 (11th Cir.1990), *cert. denied sub nomine, Hicks v. U.S.*, 502 U.S. 849, 112 S.Ct. 151, 116 L.Ed.2d 117 (1991). The Court stated, "Reasonably read, this language is directed to materials having a nexus to narcotics trafficking. We hold that this language meets the standards of practical accuracy that enable the searcher to ascertain and identify things authorized to be seized." *Id.* at 1507–08. *See also United States v. Peagler*, 847 F.2d 756, 757 (11th Cir.1988) (holding that a warrant to search for "documents, records, papers, funds and any other evidence constituting trafficking in narcotics" was not overly broad and permitted the seizure of safety deposit keys.)

In the instant case, the items described in the search warrant were reasonably linked to drug trafficking, and are described with more particularity than the items in the warrant in *Smith*. While it is true that the items described relate to Defendant's personal life, this fact does not preclude them from also being used as part of criminal activities.

■ Fourth, Defendant argues that the search warrant was executed in an unreasonable manner because the warrant permitted only federal officers to conduct the search. According to Defendant, an officer in the City of Miami Police Department participated in the search, and took custody of evidence which was used to convict Defendant's roommate of drug possession in state court. In response, the prosecution attempts to minimize the involvement of the state officer, arguing that he was not part of the initial search team and entered the premises only after the F.B.I. had completed its search. It also claims that the ammunition and clips which the officer recovered had previously been discovered by federal agents.

The Court finds that it was proper for the Miami Police Department officer to participate in the search of Defendant's residence. 18 U.S.C. § 3105 provides:

A search warrant may in all cases be served by any of the officers in its direction or by an officer authorized by law to serve such warrant, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution.

This statute provides ample authority for state law enforcement officials to participate in a federal search because it permits persons other than federal agents to act in aid of such agents when executing a search warrant.

The Fifth, Eighth, Ninth and Tenth Circuits have all held that "cooperation between federal and state law enforcement agencies in the execution of a search is not impermissible per se." *U.S. v. Medlin*, 842 F.2d 1194, 1196 (10th Cir.1988). *See United States v. Wright*, 667 F.2d 793 (9th Cir.1982); *United States v. Evans*, 572 F.2d 455 (5th Cir.), *cert. denied sub nomine, Tate v. United States*, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978); *United States v. Cox*, 462 F.2d 1293

(8th Cir.1972), *cert. denied,* 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1974). The 11th Circuit has not addressed the issue squarely, although the court approved of the participation of federal officers in the execution of a state warrant, stating that it did "not in any way wish to discourage cooperation between federal and state law enforcement officials." *United States v. Echols,* 577 F.2d 308, 311 (5th Cir.1978), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1288, 59 L.Ed.2d 499 (1979). This reasoning would apply equally to the participation of state officers in the execution of a federal warrant.

■ Defendant also objects to the use of the evidence in state court proceedings. The municipal police officer took custody of eighteen small bags of cocaine found in the roommate's room. This evidence was subsequently used in state criminal proceedings against Defendant's roommate. The Court, however, finds that it was not improper for the municipal police officer to take this evidence into custody. Prosecuting Defendant's cousin in state court, on the basis of the evidence seized, did not exceed the scope of the federal warrant.

■ Fifth, Defendant argues that the warrant application did not provide a basis for the magistrate judge to assess the credibility or veracity of the informant. Moreover, the federal agents did not take any investigative steps to corroborate the informant's allegations. The United States Supreme Court has stated that the task of a magistrate judge, when issuing a warrant, is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there exists a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1988). Thus, a court need not apply a rigid test for assessing probable cause, although veracity and basis of knowledge continue to serve as useful benchmarks.

In the present case, the Court finds that the affidavit presents sufficient probable cause for the magistrate judge to issue the warrant. First, the affidavit states that a CI has "supplied valuable, reliable information for six months of this investigation" and has purchased crack cocaine from the defendant on three separate occasions between December 1993 and February 1994. It is true that the affidavit does not provide a substantial basis for assessing the CI's veracity; it does not address his cooperation in past investigations, and it suggests that the only basis for appraising his veracity is his assistance in the present case. Nonetheless, in a factually similar case, the 11th Circuit upheld a magistrate judge's finding of probable cause where the deficiency in the area of veracity was compensated for by a showing of "basis of knowledge." *United States v. Foree,* 43 F.3d 1572, 1575–76 (11th Cir.1995).

In *Foree,* the CI visited the defendant's home and observed his indoor marijuana growing operation. Three weeks later, she returned to the home, at the direction of law enforcement, and made similar observations. On a third occasion, she was taken, under constant police surveillance, by the defendant to another location where she made detailed observations.

The Court found that one way for the police to confirm independently a CI's veracity is to "create circumstances under which she is unlikely to lie ... Here the CI made her observations in the context of a controlled surveillance operation and reported intermittently to supervising officers, who corroborated her access to the target of the investigation. As her report consisted of facts readily verifiable upon a subsequent search by the police, the CI was unlikely to be untruthful for if the warrant issued, lies would be discovered in short order and favors falsely curried would dissipate quickly." *Id.* at 1576.

In the present case, the corroboration of the CI's veracity satisfied the standard set forth in *Foree.* First, law enforcement officials in this case engaged in an investigation of the Defendant's criminal activities beginning in 1992, a period of time which preceded the involvement of the CI. This fact, not present in *Foree,* provides independent corroboration of the CI's veracity. Second, the

CI engaged in drug transaction with the defendant on three separate occasions. During the last two, the CI returned to law enforcement officials with crack cocaine, which would suggest that the transactions were consummated.[3] Third, as in *Foree*, the CI had an incentive to be truthful. On May 12, 1994, less than one week before the warrant's issuance, the CI advised the affiant that Defendant was selling more cocaine and "was still using the premises to store narcotics." The CI would have known that the presence of narcotics in Defendant's residence was readily verifiable by law enforcement, and he thus had a strong inducement to be truthful. Accordingly, there was a sufficient basis for the magistrate judge to find that probable cause existed.

▉ Sixth, Defendant argues that there was no probable cause to believe that the items specified in the warrant were on the defendant's premises. The CI never observed items (such as books, ledgers, bank records, U.S. currency) when he allegedly purchased drugs at Defendant's home. Furthermore, Defendant argues that the only basis for finding probable cause is "boiler plate" language, in which the affiant states that he has learned, based on his training and experience, that narcotic traffickers maintain on-hand large amounts of U.S. currency, that they maintain books, receipts, ledgers, etc.

▉ As a preliminary matter, the CI's failure to observe the items to be seized is not dispositive. The 11th Circuit has stated, "The nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on personal observation." *United States v. Lockett*, 674 F.2d 843, 846 (11th Cir.1982). Nonetheless, the government must still demonstrate that there is a substantial basis for believing that the items

specified in the warrant would be present at Defendant's home. *Id.* The professional experience of an investigating officer may provide such a basis.

The 11th Circuit approved of a magistrate judge's relying upon a law enforcement officer's experience as one factor in assessing probable cause. *U.S. v. Jenkins*, 901 F.2d 1075 (11th Cir.1990). In *Jenkins*, the magistrate judge issued a warrant to search the home of a security guard, who was suspected of stealing funds from the bank for which he was employed. The search warrant specified the items missing from the depository vault. The supporting affidavit also contained the statement of an FBI agent that "people who steal money are most likely to bring it to their homes for safekeeping." *Id.* at 1079. The agent had worked on bank robbery matters for ten years.[4]

The 7th Circuit has also addressed the issue, finding that probable cause existed to search a automobile where the supporting affidavit stated that there was a pattern of drug dealing involving the car and that the affiant, based on his experience with the Drug enforcement Unit, "knew that drug dealers often store drugs and drug paraphanelia in their cars." *U.S. v. Lamon*, 930 F.2d 1183 (7th Cir.1991). The court concluded, "Although conclusory statements without more do not provide a substantial basis for finding probable cause, issuing magistrates are entitled to take into account the experience of officers whose affidavits explain the significance of specific types of evidence." *Id.* at 1189.

In this case, it was reasonable for the magistrate judge to rely upon the professional experience of the affiant. At the time, he had been a Special Agent with the Federal Bureau of Investigations for six years, and was assigned to a violent street crimes squad which investigates gangs and organizations conducting violent criminal behavior. His

---

**3.** During the first alleged drug transaction, officers observed the CI purchasing narcotics from Defendant, and during two drug transactions, the CI wore a concealed microphone. These facts were omitted from the Government's application for the search warrant, and as a result, were not considered by the magistrate judge. Nonetheless, they provide after-the-fact confirmation that the magistrate judge made the correct determination regarding probable cause.

**4.** The Court in *Jenkins* cautioned that "the isolated word of an experienced FBI agent that people hide stolen items in their homes is [not] sufficient to provide probable cause to search a residence." *Id.* at 1081. In the present case, the FBI agent's professional experience was supplemented by other evidence that the defendant was engaged in drug-trafficking in his residence.

knowledge of the activities of those engaged in drug-trafficking, in conjunction with information supplied by the informant, provided a substantial basis for the magistrate judge to conclude that the items described in the warrant would be discovered in Defendant's apartment.

Finally, Defendant argues that if the warrant was invalidly executed, the government officers may not rely on the good faith exception to the warrant clause. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). By this order, the Court has determined that there was sufficient probable cause to support the warrant and that the Magistrate Judge issued it properly. As a result, it is unnecessary for this Court to make a factual determination concerning the good faith conduct of the government officers. Without deciding, for it is unnecessary to do so, the Court ventures the opinion that it appears that they acted in good faith in relying upon the warrant.

Defendant's Motion to Suppress Evidence is hereby DENIED. At trial, Defendant may challenge the admissibility of any of the evidence in question, pursuant to the Federal Rules of Evidence.

DONE AND ORDERED.

