966 F.2d 1445
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael L. JENKINS, a/k/a Mickey, Defendant-Appellant.
 No. 91-5596.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 6, 1992
Decided: June 2, 1992
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Elkins. Robert R. Merhige, Jr., Senior District Judge. (CR-90-5)
 Argued: Steven Morris Askin, Askin, Pill, Scales & Burke, L.C., Martinsburg, West Virginia, for Appellant.
 Thomas Oliver Mucklow, Assistant United States Attorney, Wheeling, West Virginia, for Appellee.
 On Brief: William A. Kolibash, United States Attorney, Sam G. Nazzaro, Assistant United States Attorney, Wheeling, West Virginia, for Appellee.
 N.D.W.Va.
 AFFIRMED.
 Before HALL, Circuit Judge, CHAPMAN, Senior Circuit Judge, and SIMONS, Senior United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Michael Jenkins was charged with conspiracy to possess crack cocaine with intent to distribute, and with two substantive counts of possession with intent to distribute crack cocaine. He was convicted on all three counts.
 
 
 2
 The record supports amply the government's contention that Jenkins was one of several large scale dealers of crack cocaine in Jefferson County, W.Va. in 1989 and 1990. He operated his cocaine business from a camper trailer on the banks of the Shenandoah River near Milville, W.Va. When customers passed Jenkins' location, they were approached either by Jenkins himself or a number of runners who were working with him.
 
 
 3
 Jenkins had multiple sources of crack cocaine. Initially, he traveled to Frederick, Md., to purchase from $200 to $2,000 worth of cocaine, often making multiple trips in a single night on weekends. Later, several suppliers delivered crack cocaine to his trailer. One of his sources was a Jamaican named Barry from Silver Spring, Md., who delivered significant amounts as often as twice a weekend.
 
 
 4
 On October 8, 1989, Jefferson County Police Officers went to Jenkins' trailer. While there, the officers noticed certain paraphernalia which they associated with the cooking and use of crack cocaine. They recovered 9.23 grams of 98% pure cocaine base, a .22 caliber firearm, and $2,313 in cash.
 
 
 5
 Also on October 8, 1989, Jenkins had crack cocaine in his possession, some of which he distributed to an associate and to others.
 
 
 6
 On or about October 29, 1989, Jenkins took his girl friend, codefendant, Mary Jane Figgans, to a motel in Ranson, W.Va. At that time he had in his possession crack cocaine and a .25 caliber firearm. Jenkins then went off with several young girls to smoke crack cocaine at the Cliffside Motel near Harpers Ferry, W.Va.
 
 
 7
 The Ranson police department went to the motel to arrest Mary Jane Figgans on a worthless check warrant. They discovered a large sum of money and what appeared to be crack cocaine. Figgans advised officers that she received the crack cocaine from Jenkins. Based on her statement, a search warrant for Jenkins' trailer was then obtained through a state magistrate.
 
 
 8
 In the meantime, while Jenkins was at the Cliffside Motel, he received a message to return to his trailer. He and the girls returned to his trailer. When they arrived Jenkins gave the girls and an associate a bowl of crack cocaine which they began to smoke. It was at that point that the police arrived at the trailer to execute the search warrant.
 
 
 9
 During the search, officers recovered approximately 31 pieces of material which Jenkins had determined was poor quality cocaine, which he had attempted to wash. They also found 1.31 grams of 98.3% pure cocaine base, a 30-30 rifle, and other drug paraphernalia.
 
 
 10
 On February 24, 1990, while on pretrial release on the indictment in this case, Jenkins was arrested by a West Virginia state police officer. At that time he had in his possession 5.96 grams of 86.6% pure cocaine base. An additional 4 grams was found in the automobile in which Jenkins and another person were sitting.
 
 
 11
 Jenkins challenges the district court's ruling on the following ten legal issues:
 
 
 12
 I.The denial of Jenkins' motion to suppress evidence seized from his trailer home;
 
 
 13
 II.The prosecution's striking of the only black juror from the jury panel;
 
 
 14
 III. A.The prosecution's reference during opening statement to 6350 35 1 an extra-judicial statement made by a co-conspirator;
 
 
 15
 B.The introduction of testimony as to an extra-judicial statement of a conspirator;
 
 
 16
 C.Certain of the district court's remarks to Jenkins' counsel.
 
 
 17
 IV.The admission of a bag of alleged cocaine;
 
 
 18
 V.The admission of the grand jury testimony of Jenkins' coconspirator Mary Figgans;
 
 
 19
 VI.The admission of evidence of bad acts not specifically charged in the Indictment;
 
 
 20
 VII.The admission of testimony which defendant alleged was developed through his statements pursuant to a plea agreement;
 
 
 21
 VIII.The admission of Jenkins' statements made to a police officer at the time of his arrest;
 
 
 22
 IX.The denial of Jenkins' motion for judgment of acquittal as to counts one, two and five;
 
 
 23
 X.The district court's calculation of the drug amounts to be considered as relevant conduct in determining Jenkins' sentence under the guidelines.
 
 
 24
 Our consideration of these issues leads us to the conclusion that only the first and fifth of them merit discussion.
 
 
 25
 A.JENKINS' MOTION TO SUPPRESS EVIDENCE SEIZED FROM HIS HOME
 
 
 26
 Jenkins challenges the admission into evidence of several items seized by the officers from his trailer, while executing the state search warrant. He claims (1) that there was insufficient probable cause to justify the issuance of the warrant; (2) that the information underlying the issuance of the warrant was stale and unreliable; and (3) that a subsequent search of the camper was an improper warrantless search. We are unpersuaded by these arguments. Mary Figgans had seen drugs in the trailer on a Thursday. Her statement to the officers had not become stale when the warrant was issued three days later. Her testimony was not used to support the presence of a specific quantity of crack cocaine, but rather to support the conclusion that Jenkins was engaged in an ongoing business of selling drugs.
 
 
 27
 Figgans' reliability was not a problem with respect to the warrant, since the magistrate was made aware that she had been arrested, and that she had been associated with Jenkins and his dealing in crack cocaine, as well as his possession of firearms. Thus, the magistrate knew Figgans was involved in the drug culture and with Jenkins in particular.
 
 
 28
 Finally, the government's position is supported by the good faith exception of United States v. Leon, 468 U.S. 897 (1984). The officers here sought and received a search warrant based in part upon the affidavit of Jenkins' co-conspirator, who had personal knowledge of his drug dealing. Nothing in the record implies bad faith on the part of the officers seeking or executing the warrant. Where there is no basis to question the good faith of the officers or the magistrate, and the warrant is not facially defective, we have held that the Leon good faith exception applies. United States v. Anderson, 851 F.2d 727 (4th Cir. 1988).
 
 
 29
 Jenkins also contends that the officers improperly seized his checkbook from the trailer one day after the initial search. Because it was dark when the officers went to the trailer on October 29, 1989, they could not conduct a thorough search that evening. They arranged to have the trailer transported to a locked, fenced-in area so their search could be continued the next day. Where the officers have probable cause to believe evidence of a crime is present, securing the premises is not unreasonable. United States v. diGregorio, 605 F.2d 1184, 1188 (1st Cir. 1979). We hold that the officers were not required to obtain a second search warrant to continue the search on October 30, the next day.
 
 
 30
 B.GRAND JURY TESTIMONY OF JENKINS' COCONSPIRATOR
 
 
 31
 After being called by the government as a witness, Mary Figgans refused to testify despite an order to do so by the district judge. This made her unavailable as a witness under Fed.R.Ev. 804(a)(2). The prosecution requested the court's permission to read a portion of her grand jury testimony to the jury. The district judge allowed the prosecution to read approximately 45 lines of her grand jury testimony.
 
 
 32
 The trial court admitted the testimony in evidence pursuant to Rule 804(b)(5), even though the prosecution had offered it pursuant to Rule 803. Under Rule 804(b)(5), a statement by an unavailable declarant may be admitted if (a) the statement is offered as evidence of a material fact; (b) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable effort; and (c) the general purpose of the Rule [of Evidence] and the interest of justice will be best served by admission of the statement into evidence.
 
 
 33
 We conclude that Figgans' grand jury statements had sufficient circumstantial guarantees of trustworthiness and reliability to satisfy Rule 804(b)(5), and the Sixth Amendment. See Anderson v. United States, 417 U.S. 211 (1974). Her statements were given under oath, creating the possibility of a perjury charge if she knowingly testified falsely. She was examined by a U. S. Attorney in the presence of the grand jury, and her statements were recorded verbatim, thus minimizing the possibility of her intimidation by the government. Finally, the secrecy of the grand jury relieved all parties of outside pressure. United States v. McCall, 740 F.2d 1331, 1341 (4th Cir. 1984).
 
 
 34
 Moreover, Figgans had testified to facts surrounding her involvement with Jenkins and their drug associates. She was relying on first-hand knowledge, and she never recanted her grand jury testimony or expressed reservations about its accuracy. These considerations support the trustworthiness of her testimony. See United States v. Carlson, 547 F.2d 1346, 1354 (8th Cir. 1976), cert. denied, 431 U.S. 914 (1977).
 
 
 35
 Figgans' grand jury testimony was also corroborated by the testimony of other witnesses at Jenkins' trial.
 
 
 36
 Jenkins further claims that he was not afforded a chance to meet the challenge of Figgans' grand jury testimony because he had no warning of her unavailability. This argument is unpersuasive, because counsel had notice that Figgans was scheduled to be a witness for the United States and that she had testified before a grand jury. Appellant and his counsel had access to her grand jury transcript (16 pages) on the previous night. Moreover, the prosecution was taken by surprise by Figgans' refusal to testify. Failure of the prosecution to give formal pretrial notice of its intention to use a grand jury transcript does not preclude its use. Carlson, 547 F.2d at 1355.
 
 
 37
 Under our precedents, the trial court should have cautioned the jury to remember that Figgans' grand jury testimony had not been subject to cross-examination, but in light of the overwhelming weight of evidence of Jenkins' guilt, we find the omission harmless error. United States v. Murphy, 696 F.2d 282 (1982); United States v. Stockton, 788 F.2d 210 (4th Cir. 1986).
 
 
 38
 We conclude that Jenkins' other assignments of error have no merit. Accordingly, we affirm Jenkins' convictions and the sentence imposed by the district court.
 
 AFFIRMED