In the

# United States Court of Appeals

### For the Seventh Circuit

No. 06-4235

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN OROZCO,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CR 1164—**Joan Humphrey Lefkow**, *Judge.*

ARGUED SEPTEMBER 3, 2008—DECIDED AUGUST 13, 2009

Before EASTERBROOK, *Chief Judge,* and ROVNER and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Federal agents arrested John Orozco after they searched his home pursuant to a warrant and found a gun and a digital scale with trace amounts of cocaine. The government charged Orozco with possessing a firearm after having been convicted of a felony and conspiring to distribute more than five kilograms of cocaine and marijuana. After a jury con-

victed him on both counts, the district judge sentenced Orozco to 360 months in prison.

Orozco appeals his convictions and sentence, arguing that the evidence obtained in the search should have been suppressed, that the district judge improperly admitted evidence relating to Orozco's prior firearm conviction, and that the judge should not have applied a two-level sentencing guidelines enhancement for possessing a firearm in connection with a drug offense. We find no merit in any of Orozco's challenges and affirm his convictions and sentence.

## I. Background

In December 2002 federal agents applied for a warrant to search Orozco's residence near Aurora, Illinois, for records relating to narcotics transactions and membership lists for the Latin Kings gang. FBI Special Agent Ken Burress submitted an affidavit in support of the warrant, which stated that: (1) reliable gang sources told Burress that Orozco was the second-in-command of the Aurora Latin Kings gang and dealt in large quantities of cocaine and marijuana; (2) several gang members admitted purchasing drugs from Orozco; and (3) Burress knew from his ten years of experience in narcotics investigations that high-ranking gang members often kept detailed records of drug transactions and gang membership lists in their homes. Based on this information, a magistrate judge issued the search warrant.

Federal agents executed the warrant and found a Beretta handgun, a box of ammunition, a magazine, two gun

holsters, and a digital scale with trace amounts of cocaine in Orozco's home. Orozco was subsequently arrested and charged with possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and conspiracy to distribute cocaine and marijuana in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Orozco moved to quash the search warrant and suppress the evidence found at his home, claiming that no probable cause existed for the search. The district court agreed that the warrant was not supported by probable cause, but permitted the admission of the evidence at trial because the court found that the officers had acted in good faith.

At trial Orozco argued that the gun belonged to his wife, not him. FBI Special Agent Neal Ormerod testified that he had found a gun holster in Orozco's closet while searching his residence and that a holster is primarily used to carry a concealed firearm. On cross-examination Ormerod stated that the holster was set up for a right-handed shooter. Defense counsel then asked Agent Ormerod whether he knew that Orozco was left-handed; Ormerod said he did not. Following this testimony, the government requested permission to introduce the testimony of Aurora Police Officer Dan Woods to rebut the impression created by defense counsel that Orozco could not have used the holster because he is left-handed. The court granted permission over Orozco's objection. Officer Woods testified that in September 1994 he encountered Orozco under suspicious circumstances. After a brief exchange between the two, Orozco put his right hand under his shirt and grabbed at his waistband. Woods ordered Orozco to place his hands on a nearby

vehicle so Woods could search him, but Orozco ran. Woods gave chase and saw Orozco—using his right hand—remove something from his waistband and toss it to the ground. After Orozco was arrested, Officer Woods retraced his steps and found a firearm on the ground where Orozco had tossed the item he removed from his waistband. Orozco was charged and convicted of unlawful possession of the firearm. This evidence, the government argued, showed that the gun discovered in the search of Orozco's home belonged to the left-handed Orozco even though the holster was set up for a right-handed shooter.

The jury convicted Orozco of both charges, and a judge sentenced him to 360 months' imprisonment on the conspiracy count and a concurrent 120 months' imprisonment on the felon-in-possession count. In calculating Orozco's guidelines sentence, the judge imposed a two-level enhancement for possession of a firearm in connection with a drug offense. Orozco objected to the enhancement, claiming that there was no evidence that he had possessed the gun in connection with a drug conspiracy. The judge held that the connection between the two was a permissible inference and applied the enhancement.

## II. Discussion

### A. Search Warrant

We first address Orozco's claim that the evidence obtained from the search of his home should have been

suppressed. The district judge held that while the search warrant was not supported by probable cause, the evidence was nevertheless admissible because the officers acted in good faith. *See United States v. Leon*, 468 U.S. 897 (1984). Both parties take issue with the district court's ruling. Orozco agrees that no probable cause existed for the search, but claims the district court erred in applying the good-faith exception to the exclusionary rule. The government contends that not only did the officers executing the search rely on the warrant in good faith, but the district court erred in holding that the search warrant was not supported by probable cause.

Probable cause is a practical, nontechnical inquiry that asks whether there is a fair probability, given the totality of the circumstances, that evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "When, as here, an affidavit is the only evidence presented to a judge to support a search warrant, 'the validity of the warrant rests solely on the strength of the affidavit.'" *United States v. Mykytiuk*, 402 F.3d 773, 775 (7th Cir. 2005) (quoting *United States v. Peck*, 317 F.3d 754, 755-56 (7th Cir. 2003)). The question for us is whether Agent Burress's affidavit adequately established probable cause to search Orozco's home for narcotics and gang-related evidence. Our standard of review requires us to give "great deference" to the decision of the magistrate judge who issued the warrant and no deference to the district court's determination that probable cause was lacking. *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008).

Agent Burress's affidavit stated that according to reliable sources, Orozco was the second-in-command of the Aurora Latin Kings gang. In addition, several cooperating gang members told Agent Burress that Orozco was a large-scale drug trafficker and that they had purchased drugs from Orozco in the recent past. Moreover, Agent Burress asserted that in his ten years of experience, he knew that high-ranking gang members often kept membership lists, drug-transaction records, and other evidence of gang- and drug-related activity in their homes. Based on this information, the magistrate judge issued the warrant to search Orozco's home for "[l]edgers/records related to narcotics transactions, gang related indicia, photographs of gang members, ledgers/records related to gang activity, indicia of residency and real estate documents."

The government concedes that the only support for a link between Orozco's home and the sought-after evidence of drug dealing and gang activity was Agent Burress's belief—informed by his decade of experience as a narcotics investigator—that Orozco, as second-in-command of the Aurora Latin Kings gang, would keep drug- and gang-related evidence at his home. The government claims this is sufficient to support probable cause and cites our decision in *United States v. Lamon* for support. 930 F.2d 1183 (7th Cir. 1991). In *Lamon*, an informant told police that Lamon routinely sold cocaine out of his house and his car. Based on this information, police obtained a warrant to search Lamon's residence and his car and found cocaine and drug-packaging materials in both places. *Id.* at 1185. During the search, Lamon

told officers that the house was only his secondary residence; his primary residence was about a mile away. After the search police returned to court and requested a second warrant to search Lamon's primary residence. Admitting that the informant had only identified Lamon's secondary residence and his car as sites of drug sales, the requesting officer asserted that in his "nine years of investigating drug trafficking in the Milwaukee area," he knew that drug dealers often kept drugs and records at their primary residence. *Id.* at 1186. The state court issued a search warrant on this information. We upheld the warrant, stating that the specific evidence of drugs in Lamon's second residence plus the officer's experience regarding drug dealers' primary residences supported the issuing court's probable-cause determination.

The district judge thought *Lamon* was distinguishable from the facts at issue here. It is true that in *Lamon* the affidavit contained more than just the officer's assertion that drug dealers often kept drug evidence in their homes; our opinion also emphasized that police had already discovered drugs and drug-packaging materials in Lamon's secondary residence and in his car. Here, the link between Orozco's home and the gang and narcotics evidence rests solely on Agent Burress's assertion that high-ranking gang members often keep evidence of gang and drug activity in their homes. The district judge believed that the officer's experience, without more, was not sufficient to support probable cause to search Orozco's home.

We disagree. It is true that Agent Burress's assertion about the likelihood of locating evidence in the home of a high-ranking gang member was not corroborated by information specific to Orozco's activities at his home. But it is well established as a general matter that a magistrate evaluating a warrant application is entitled to take an officer's experience into account in determining whether probable cause exists. *Lamon*, 930 F.2d at 1189. "Warrants may be issued even in the absence of direct evidence linking criminal objects to a particular site." *Id.* at 1188 (internal quotation marks omitted). An issuing magistrate "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense," and specifically, "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." *Id.* (internal quotation marks omitted).

Orozco cites the Sixth Circuit's decision in *United States v. Schultz*, 14 F.3d 1093 (6th Cir. 1994), as support for his argument that Burress's affidavit was deficient. In that case, an informant told the police that a man named "Schultz" supplied him with drugs. Police determined where Schultz lived and that he had prior convictions for possession of marijuana. Police also discovered that Schultz owned several safe-deposit boxes at a local bank. Based on this information, an officer applied for a warrant to search the safe-deposit boxes, asserting that "[b]ased on his training and experience[,] . . . it is not uncommon for the records, etc., of such [drug] distribution to be maintained in safe deposit boxes." *Id.* at 1097. The Sixth Circuit held that the affidavit was insufficient to establish probable cause.

Burress's affidavit was stronger than the affidavit at issue in *Schultz.* The affidavit in *Schultz* said only that it was "not uncommon," in the agent's experience, for drug dealers to keep records of drug activity in safe-deposit boxes. Here, in contrast, Burress swore that his decade of experience as a narcotics investigator convinced him that because Orozco was a high-ranking gang member, evidence of drug trafficking and gang activity "will be found" in his home. The issuing magistrate judge was entitled to credit Burress's lengthy experience and high degree of confidence that the sought-after evidence was very likely to be found in Orozco's home. Giving "great deference" to the decision of the magistrate judge, *McIntire,* 516 F.3d at 578, we conclude that Burress's affidavit was sufficient to establish probable cause to search Orozco's home.

And were it not, we would otherwise agree with the district court's conclusion that the evidence obtained in the search was admissible under the good-faith exception. The fruits of a search based on an invalid warrant may be admitted at trial if the executing officer relied on the invalid warrant in good faith. *Leon*, 468 U.S. at 922. "An officer's decision to obtain a warrant is *prima facie* evidence that she was acting in good faith." *Mykytiuk*, 402 F.3d at 777. The defendant can rebut the presumption of good faith by showing that (1) the issuing judge abandoned his role as a neutral and detached arbiter; (2) the officers were reckless or dishonest in preparing the supporting affidavit; or (3) the affidavit was so lacking in probable cause that no officer could have reasonably relied on it. *Id.* (citing *Leon*, 468 U.S. at 923). Orozco confines his argument to this last

point—he claims that no reasonable officer could have believed Agent Burress's affidavit was sufficient to establish probable cause.

We are not persuaded. We evaluate an officer's good-faith reliance with an analysis similar to the one used in qualified-immunity cases and charge officers with knowledge of well-established legal principles. *United States v. Koerth*, 312 F.3d 862, 869 (7th Cir. 2002). We have not "clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand." *Id.* To the contrary, the facts in *Lamon* were quite similar (though not identical) to those at issue here, and we upheld the warrant in that case. Furthermore, there is nothing on the face of this warrant that would cause the executing officers to suspect that probable cause was lacking. The district court correctly concluded that Agent Burress acted in good faith when he executed the search of Orozco's home in reliance on the warrant. The court therefore properly denied Orozco's suppression motion.

## B. Evidence of Prior Conviction

Orozco next contends that the evidence relating to his prior firearm conviction was inadmissible under Rule 404(b) of the *Federal Rules of Evidence.* We will uphold a district judge's Rule 404(b) ruling if (1) the evidence is admitted for a purpose other than establishing the defendant's propensity to commit a crime; (2) the evidence is similar enough and close enough in time to be relevant

to the matter at hand; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *See United States v. Dennis*, 497 F.3d 765, 768 (7th Cir. 2007).

The district court applied these factors and concluded that Officer Woods's testimony was admissible under Rule 404(b). We agree. First, the evidence was not admitted to show Orozco's propensity to commit crime; it was admitted for the purpose of showing that Orozco handles firearms with his right hand, not his left. Furthermore, Orozco opened the door to this evidence by cross-examining Agent Ormerod about the fact that the holster found in his closet was set up for a right-hand shooter. *See United States v. Bursey*, 85 F.3d 293, 297 (7th Cir. 1996). Once he did so, the government was free to introduce evidence tending to show that although he was left-handed, Orozco handles firearms with his right hand. Moreover, the evidence was sufficiently similar to the charged firearm offense to be relevant to the issues being tried; Orozco's prior and present gun offenses both involved acts of unlawful possession. Orozco argues that the act of tossing a gun while running from police differs significantly from the act of pulling a gun from a holster to shoot. While certainly not identical, they are similar enough for purposes of Rule 404(b). *See United States v. Lloyd*, 71 F.3d 1256, 1264-65 (7th Cir. 1995) (observing that we will not enforce the similarity requirement too rigidly). The facts underlying Orozco's prior conviction demonstrate that Orozco carried a gun on his

right side and used his right hand to pull it out of his waistband and toss it away; this evidence suggests—albeit not conclusively—that Orozco handles guns with his right hand despite being generally left-handed. The evidence was clearly strong enough—Orozco pleaded guilty in the earlier case—and its probative value was not outweighed by the danger of unfair prejudice to Orozco. Finally, the district judge issued a limiting instruction reminding the jury that this evidence could only be considered on the question of whether Orozco used his right hand to handle guns. Accordingly, the district court did not abuse its discretion in admitting the evidence relating to Orozco's prior firearm conviction.

## C. Sentence Enhancement

Finally, Orozco argues that the district court improperly enhanced his sentence by two levels for possessing a gun in connection with a drug offense. Section 2D1.1(b)(1) of the sentencing guidelines instructs the sentencing court to increase a defendant's base offense level by two levels "[i]f a dangerous weapon (including a firearm) was possessed." Application Note 3 clarifies that this enhancement should not be applied if "it is clearly improbable that the weapon was connected with the offense." A burden-shifting approach determines if the § 2D1.1(b)(1) enhancement applies. *United States v. Bothun*, 424 F.3d 582 (7th Cir. 2005). The government must first prove by a preponderance of the evidence that the defendant possessed the gun; once it has done so, the burden shifts to the defendant to show that it was "clearly improbable"

that the gun was connected to the underlying drug offense. *Id.* at 586.

Here, the government plainly met its burden of proving that Orozco possessed the gun found in his house; Orozco failed to carry his burden of establishing that it was "clearly improbable" that the gun was connected to the charged drug conspiracy. Orozco points out that there was no evidence that the gun was actually used in any drug transaction, but this argument misses the point. Agent Ormerod testified that he found the gun and ammunition in Orozco's home and the holster in his bedroom. He also testified that agents found a digital scale with traces of cocaine residue in the home, suggesting that Orozco conducted drug transactions there. That there was no evidence that Orozco actually *used* the gun in connection with a drug transaction does not make it "clearly improbable" that the gun was connected to the underlying drug conspiracy. The district court properly applied the § 2D1.1(b)(1) enhancement.

For the foregoing reasons, we AFFIRM the judgment of the district court.