NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 10, 2010
Decided January 21, 2011

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 10-2090 | |
| | Appeal from the United States District |
| UNITED STATES OF AMERICA, | Court for the Northern District of Illinois, |
| *Plaintiff-Appellee*, | Eastern Division. |
| | |
| *v.* | No. 08 CR 325-1 |
| | |
| TERRANCE SEWELL, | Joan Humphrey Lefkow, |
| *Defendant-Appellant*. | *Judge*. |

**O R D E R**

Law enforcement executed a search warrant for Terrance Sewell's residence in March 2007 and seized approximately 43 grams of crack cocaine, a scale, and a firearm. Sewell pleaded guilty to possession of a controlled substance with intent to distribute, *see* 21 U.S.C. § 841(a)(1), subject to his right to appeal the district judge's denial of his motion to suppress the evidence seized from his home. FED. R. CRIM. P. 11(a)(2). We affirm.

Sewell came to the attention of federal authorities investigating organized drug trafficking carried out by members of the Gangster Disciples street gang at Chicago's Cabrini Green housing project. Sewell reportedly belongs to the Gangster Disciples and has a prior felony conviction for distributing cocaine.

A magistrate judge granted a search warrant for Sewell's residence based on a 26-page affidavit from Agent Jeffrey Sisko of the Bureau of Alcohol, Tobacco, Firearms, and Explosives. The affidavit recounted Agent Sisko's extensive experience and documented the government's investigation into the gang's drug-trafficking operation. According to the affidavit, federal agents observed several interactions between Sewell and Rondell Freeman, a fellow Disciple who led the gang's drug operation at Cabrini Green. Agent Sisko asserted in the affidavit that these sightings, along with drug paraphernalia discarded by Freeman in his dumpster and recovered by investigators, led him to conclude that Sewell routinely supplied Freeman with drugs which Freeman then packaged and attempted to sell. For instance, in August 2006 agents saw Freeman and Sewell together enter Freeman's condo building (out of which authorities suspected that Freeman was preparing drugs for sale). The next day authorities aborted one of Freeman's attempted drug sales near Cabrini Green by stopping the suspected buyer's car. A week later, the affidavit further recounted, agents saw what they believe was another interaction between Sewell and Freeman in the parking lot of Freeman's condo. Agents later recovered a white plastic bag that Freeman discarded into a dumpster; the bag was found to contain narcotic paraphernalia, namely latex gloves, small plastic bags, and sleeping pills commonly used to dilute cocaine. The affidavit reflected a similar pattern that unfolded over the following months: a brief meeting would take place between Freeman and Sewell, followed by Freeman's disposal—sometimes a few hours after Sewell's visit and sometimes a few days later—of materials used to package drugs for sale. The affidavit also related wiretaps that agents had carried out on Freeman's cell phone, recording a conversation that Freeman had with Sewell about suspected drug trafficking, as well as a conversation that Freeman had with another co-conspirator about Sewell's involvement.

Sewell moved to suppress the evidence seized from his apartment, primarily arguing that Agent Sisko presented insufficient facts to establish probable cause. Sewell emphasized that the affidavit not only lacked direct evidence of wrongdoing, but also recklessly omitted three important details that he insists call into question whether Agent Sisko sought the warrant in good faith: the government used an informant who did not know Sewell but knew all other members of the drug operation, the same informant committed criminal acts while cooperating with the government, and Agent Sisko did not reveal Freeman's visitors before he disposed of narcotic paraphernalia, but after Sewell left (and thus, he argued, someone else could be Freeman's source).

The district judge denied Sewell's motion to suppress after concluding that the affidavit provided probable cause. Specifically, the judge focused on Sewell's multiple meetings with Freeman at his condo, and the phone conversations corroborating Sewell's involvement in drug trafficking. Alternatively, the judge also found that even if probable

cause were lacking Agent Sisko acted in good faith, thus precluding application of the exclusionary rule.

At the outset, Sewell addresses the applicable standard of review and argues that we should review the magistrate judge's probable-cause ruling de novo. But such determinations are afforded "great deference," *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008); *see United States v. Dismuke*, 593 F.3d 582, 586 (7th Cir. 2010), and we decline to depart from that standard.

Sewell next argues that the district judge erred when she denied his motion to suppress because the individual "snippets" recited in the affidavit did not supply enough evidence to establish probable cause. Sewell emphasizes that the affidavit recites no direct evidence of drug dealing, that investigators recorded only one conversation he had with Freeman, and that Supreme Court precedent dictates that Sewell's visits with Freeman cannot alone establish probable cause.

A search-warrant affidavit establishes probable cause when it sets forth sufficient evidence to persuade a reasonably prudent person that there was a fair probability that a search will reveal evidence of criminal activity. *See United States v. Curry*, 538 F.3d 718, 729-30 (7th Cir. 2008). The magistrate judge issuing the warrant may take into account the totality of the circumstances, apply common sense, and consider the agent's experience. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Orozco*, 576 F.3d 745, 748-49 (7th Cir. 2009). Moreover, a magistrate judge may draw reasonable inferences about the location of stashed evidence based on the nature of the evidence and the particular offense, and "specifically, [i]n the case of drug dealers, evidence is likely to be found where the dealers live." *Orozco*, 576 F.3d at 749 (internal citations and quotation omitted). As long as the issuing magistrate judge had a substantial basis for his conclusion, we will uphold a finding of probable cause, s*ee Curry*, 538 F.3d at 729, and if as here the agent's affidavit was the sole support for the warrant, then the warrant's validity depends on the strength of the affidavit. *See Orozco*, 576 F.3d at 748.

As the district judge determined, the affidavit recited enough circumstantial evidence from which a magistrate judge could infer probable cause that Sewell likely kept drugs in his home. Sewell met with the suspected leader of a drug trafficking operation (Freeman) at his drug packaging site (his condo), and wiretapped phone conversations captured Freeman discussing drug trafficking with Sewell directly and with another co-conspirator about Sewell's involvement. Additionally, the district judge was also correct to note that Freeman disposed of narcotic paraphernalia shortly after Sewell visited the condo, that Sewell belonged to the gang that ran the operation at Cabrini Green, and that he had a prior

conviction for selling drugs.  The facts cumulatively furnish a substantial basis for the probable cause determination.

Sewell further contends that his mere presence at a crime site (Freeman's condo) or association with criminal suspects could not provide probable cause to search his home, a principle he draws from *Sibron v. New York*, 392 U.S. 40 (1968), and *Ybarra v. Illinois*, 444 U.S. 85 (1979).  But his reliance on these two cases is misplaced; the facts of both cases provide a far weaker argument for the existence of probable cause.  In *Sibron* an officer performed an illegal search after inferring that a suspect sold drugs merely because he spoke to narcotics addicts, *see Sibron*, 392 U.S. at 62-63, and in *Ybarra* officers with a warrant to search a tavern unlawfully searched its patrons based solely on their presence in the bar.  *Ybarra*, 444 U.S. at 90-91.  Here, by contrast, the agent's affidavit describes much more than the defendant's conversations with drug addicts or his presence near suspected criminals.  As the district court noted, Freeman led a drug-trafficking organization run by Sewell's gang, and that provides greater support for a finding of probable cause than the drug addicts in *Sibron*.  And unlike *Ybarra*, Sewell encountered Freeman not at "some innocuous location" (as the district judge put it), but rather at his gang's suspected drug packaging facility.

Sewell next asserts, for the first time in his reply brief, that Agent Sisko recklessly omitted material information from the affidavit and thus the evidence should have been suppressed under *Franks v. Delaware*, 438 U.S. 154 (1978).  But Sewell waived this argument by failing to address it in his opening brief.  *See United States v. Li*, 615 F.3d 752, 757 (7th Cir. 2010).

Finally, because we conclude that the search warrant was supported by probable cause, we need not address the government's alternative argument that, even if the affidavit were deficient, the evidence seized from Sewell's apartment would have been admissible under the good-faith exception to the exclusionary rule.  S*ee United States v. Leon*, 468 U.S. 897, 922 (1984); *United States v. Farmer*, 543 F.3d 363, 378 (7th Cir. 2008).  The good-faith exception allows the admission of evidence recovered without a proper search warrant as long as an officer relied in good faith on a neutral magistrate's issuance of a facially valid warrant.  *See Curry*, 538 F.3d at 730.  An officer's request for a search warrant raises a presumption of good faith, *see id.*, that Sewell has failed to rebut.  Sewell asserts that Agent Sisko recklessly omitted material information about the government informant's criminal past, but this information was immaterial because the evidence critical to the probable cause determination was corroborated by other investigative means, such as surveillance and wiretaps.

AFFIRMED.